**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

|  |  |  |
|---|---|---|
| PLAYBOY ENTERPRISES INTERNATIONAL, INC., | : | |
| | : | |
| | : | Civil Action No. 21 Civ. 6419 (VM) |
| Plaintiff, | : | |
| | : | |
| v. | : | **FILED UNDER SEAL** |
| PLAYBOY ENTERPRISES, INC., et al.. | : | |
| Defendant. | : | |
| | : | |
| | : | |

**[~~PROPOSED~~]** *EX PARTE* **TEMPORARY RESTRAINING ORDER, AN ASSET FREEZE, EXPEDITED DISCOVERY ORDER, ORDER GRANTING ALTERNATIVE SERVICE, AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION**

Plaintiff Playboy Enterprises International, Inc. ("Playboy") filed a complaint to stop the Defendants from stealing the contents of Playboy's Website, counterfeiting the Playboy trademarks and PLAYBOY© Copyrights, forging documents and registering fraudulent entities in furtherance of their unlawful acts. Playboy filed its complaint under: (1) the Lanham Act (15 U.S.C. §§ 1114, 1125(a), 1116) (Counts I and III); (2) the Copyright Act (17 U.S.C. 101, et seq. 502) (Count II), and (3) trademark and unfair competition under New York common law (Count IV). Playboy moved, under seal, for emergency *ex parte* relief in the form of:

1. A temporary restraining order, which should be granted[1] if Playboy establishes:

    a. A likelihood of success on the merits;

    b. Irreparable harm without the entry of a temporary restraining order;

---

[1] *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Seijas v. Republic of Argentina*, 352 Fed. App'x. 519, 521 (2d Cir. 2009).

    c.   That the balance of hardships tips in Playboy's favor; and

    d.   That the public interest would be served by the entry of a temporary restraining order

2.  <u>An account and asset freeze order</u> (seizure order), which should be granted if Playboy establishes the elements set forth in the Lanham Act, 15 U.S.C. § 1116(d);

3.  <u>An expedited discovery order</u>;

4.  <u>An order granting alternative service by email or other electronic means</u>; and

5.  <u>An order to show cause why a preliminary injunction should not be granted</u> ("*Ex Parte* Motion").  Having reviewed Playboy's Complaint, the *Ex Parte* Motion and all supporting declarations and exhibits thereto,

**THE COURT HEREBY FINDS THAT:**

<u>**Jurisdiction and Venue**</u>

1.  This Court has subject matter jurisdiction over Playboy's claims under 28 U.S.C. §§ 1331 & 1338, and 15 U.S.C. § 1121.

2.  This Court has personal jurisdiction over Defendants[2] because:

    a.   The Court will be considering matters related to Defendants' registration of Fraudulent Entities and addresses in this district and within New York state;

---

[2] Defined as Playboy Enterprises, Inc.; PLBY Group, Inc.; Junhan Huang, aka John Huang; Mountain Crest Acquisition Corp., Playboy Enterprises (Asia) Limited; Wong's Capital Holding Group Limited; Playboy (China) Brand Management Center; Playboy Tobacco Group Limited; Huahua Rabbit (Xiamen) Health Science and Technology Co., Ltd.; Haihan Fashion (Shanghai) Enterprises Development Co., Ltd., Bunny Owner Group; Bunnygirl Certification Institute; Bunny Girl Foundation; Bunny Girl Union; Bunny Hunter LLC; International Model Certification Association; Playboy Enterprises International, Inc.; Pleasure International Corp.; Wong's Bank Group; Wong's Foundation; Wong's International Bank; Wong's Syndicate; World Future Leader University; World Industrial Capital Organization, Fu Manhua, Ming Cai, Lingling Zhang, and John Fu.

      b.   The Defendants are operating the Counterfeit Websites accessible and interactive to users in this district and within New York state; and

      c.   Playboy's Complaint and moving papers demonstrate that Defendants undertook the unlawful counterfeiting scheme with knowledge that they would cause consumers and Playboy harm through the Counterfeit Websites accessible to consumers in New York as Playboy does business in New York and has done business in New York for dozens of years.

*See* Complaint ¶¶ 15-23; Brief I.S.O. Ex Parte Motion ("Brief"), pp 8-10.

3.   Venue is proper in this judicial district in the Southern District of New York (see 28 U.S.C. § 1391) because:

      a.   A substantial part of the conduct and the property at issue is located in this jurisdiction. Defendants' have registered Fraudulent Entities with addresses located in this judicial district in furtherance of their counterfeiting scheme.

      b.   Additionally, the Complaint alleges facts to show that Defendants are subject to personal jurisdiction in this judicial district, and no other district appears more appropriately suited to resolve this dispute.

4.   The Complaint pleads sufficient facts and states claims against Defendants for:

      a.   Trademark counterfeiting, unfair competition, and false designation of origin, in violation of the Lanham Act, Sections 32 and 43(a) (15 U.S.C. §§ 1114, 1125(a) (Counts I and III);

      b.   Copyright infringement, in violation of the Copyright Act (17 U.S.C. §§ 101 et seq.) (Count II); and

3

    c.   Trademark infringement and unfair competition in violation of New York

        common law (Count IV).

**<u>Likelihood of Success on the Merits of Playboy's Claims in the Complaint</u>**

5.  Playboy is likely to succeed on the merits of these claims because Playboy has shown

that:

    a.   It owns the registered Playboy Marks[3] and associated common-law rights

        (Complaint ¶¶ 142-157, Ex. 4; Declaration of Jennifer McCarthy ("McCarthy

        Decl."), ¶¶ 12-30.

    b.   Defendants' fraudulent scheme involves counterfeiting those exact trademarks for

        the exact online retail store services and goods as Playboy, thereby confusing

        customers (Compl. ¶¶ 163-94, Ex.7; McCarthy Decl. ¶¶ 12-30) (*See* 15 U.S.C. §§

        1114(1), 1125(a));

    c.   Playboy owns the registered copyrights in the PLAYBOY© Copyrights[4]

        (Complaint ¶¶ 158-62, Ex. 5; McCarthy Decl. ¶¶ 63-67).

    d.   In creating the Counterfeit Websites Defendants directly copied and infringed

        Playboy's copyrighted content, including but not limited to the PLAYBOY©

        Copyrights (Compl. ¶¶ 194-200, Ex. 8; McCarthy Decl.¶ 68-71) (*See* 17 U.S.C. §

        106);

    Playboy also has established a likelihood of success on the merits of its New York

common law trademark infringement and unfair competition claims because the elements of

---

[3] Defined as the PLAYBOY® Trademarks, RABBIT HEAD DESIGN® Trademarks, BUNNY
STORE® Trademark, PLBY® Trademark, and PLEASURE FOR ALL® Trademarks
collectively, along with their common low rights, as defined in Playboy's Complaint.
[4] Defined as U.S. Copyright Registration Nos. VA 2-144-651, and VA 2-174-035.

those mirror the elements of Lanham Act trademark infringement and unfair competition claims, and Playboy is likely to succeed on the merits of its Lanham Act claims. *Avon Prods. V. S.C. Johnson & Son*, 984 F. Supp. 768, 800 (S.D.N.Y. 1997); *Twentieth Century Fox Film Corp. v. Marvel Enters.*, 220 F. Supp. 2d 289 (S.D.N.Y. 2002); *Franklin v. X Gear 101, LLC*, 17 Civ. 6452 (GBD) (GWG) 2018 U.S. Dist. LEXIS 122658 (S.D.N.Y. July 23, 2018).

### Irreparable Harm

6.      Playboy also has established that it will suffer immediate, irreparable harm if this Court denies the *Ex Parte* Motion. Specifically, it has shown that it has a strong reputation and goodwill under the Playboy Marks (and other source identifiers), which was established due to Playboy's lengthy and (until now) exclusive use of those marks in connection with Playboy's authentic Website, goods and services. *See* McCarthy Decl. ¶¶ 91-100.

7.      Defendants have exploited Playboy's reputation and goodwill, using it to trick the public, consumers, government agencies, and potential licensees into thinking that Defendants are affiliated with, or authorized by, Playboy when they are not.

8.      Playboy has shown that consumers access Defendants' Counterfeit Websites and/or Counterfeit Domains only because they think Defendants' Counterfeit Websites and/or Counterfeit Domains are Playboy-affiliated. If consumers come to think they cannot trust Playboy or Playboy's authentic Website because of Defendants' actions, then Playboy's reputation and goodwill will erode – that is the definition of irreparable harm. *See* McCarthy Decl. ¶ 91.

9.      Defendants' creation of multiple Fraudulent Entities using the Playboy Marks without authorization, Defendants' use of forged documents purporting to be executed by

Playboy, and Defendants' creation of the Additional Domain is likely to have lasting irreparable harm on Playboy's licensing business in the United States and overseas.

## **Balance of the Hardships**

10.     Playboy also has shown that the balance of hardships tips in its favor.

11.     Playboy has a protectable legal interest in protecting its reputation under the Playboy Marks, PLAYBOY© Copyrights, and other source identifiers.

12.     By contrast, there is no evidence showing that Defendants have any protectable interest in counterfeiting those source identifiers to defraud Playboy out of the control over its intellectual property. *AW Licensing, LLC v. Bao*, No. 15-cv-1373, 2015 U.S. Dist. LEXIS 177101 (S.D.N.Y. April 2, 2015)

## **Public Interest**

13.     Playboy also has shown that the public interest favors granting the *Ex Parte* Motion. The public has a strong interest in being protected from confusion in general. But the public has an even stronger interest in being protected from illegal phishing schemes, namely, being manipulated through trademark counterfeiting into believing that they are doing business with Playboy, when they are not.

## **Strong Likelihood that Defendants will Conceal Evidence of Unlawful Acts**

14.     Playboy also has shown that, if Defendants have notice of this lawsuit and Playboy's *Ex Parte* Motion, they will immediately alter, conceal, or destroy evidence; they will move their operations elsewhere (most likely outside the reach of this Court); and they will irreparably frustrate this Court's ability to grant effective final relief. (Compl. ¶¶ 204-24 (discussing the fraudulent conduct of Defendants); Hood Decl ¶¶ 10-67 (detailing how Defendants have submitted fake addresses in association with the Fraudulent Entities).

15.     Playboy establishes that *ex parte* relief is imperative, and that restrictions should immediately be placed on Defendants' instrumentalities for their counterfeiting scheme, including: Defendants' Counterfeit Websites; Defendants' Counterfeit Domains; the Additional Domain; use of online privacy protection services; any payment processing and merchant payment accounts, and the Fraudulent Entities.

16.     Each of these instrumentalities is enabled by third parties whose cooperation is essential to avoid irreparable harm. Any burden or negative effect on those third parties will be minimal compared to the harm that Playboy and consumers are suffering. Thus, the Court finds good cause to require the third-parties' cooperation and compliance with this Order.

**<u>Good Cause for Account and Asset Freeze</u>**

17.     The Court also finds good cause to freeze Defendants' access to these accounts and instrumentalities and that Playboy has met all statutory requirements for emergency *ex parte* relief under the Lanham Act, 15 U.S.C. § 1116. (*See* Brief, 19-21; Declaration of Marcella Ballard, ¶¶ 1-11).

**<u>Good Cause for Expedited Discovery</u>**

18.     The Court also finds good cause to grant expedited discovery. Defendants succeed in their scheme, in part, because they operate anonymously using residential addresses that do not correspond to businesses that they purport to be. Defendants and any third parties should be compelled, immediately, to disclose Defendants' identities and to provide certain information about Defendants' counterfeiting scheme via third-party instrumentalities, so these instrumentalities can be shut down, so evidence can be preserved for trial, and so this Court can grant effective final relief. *Streamlight, Inc. v. Gindi*, 18-CV-987 (NG) (E.D.N.Y. April 23, 2018) (granting expedited discovery where the plaintiffs sought to identify all persons involved

in the counterfeiting); *Dentsply Sirona Inc. v. LIK Supply, Corp.*, 3:16-cv-00806 (MAD/DEP)
(N.D.N.Y. July 15, 2016) (granting expedited discovery where the plaintiff was unable to
ascertain the extent of the defendants' counterfeiting without it); *Admarketplace, Inc. v. Tee
Support, Inc.*, 13-civ-5635-LGS 2013 U.S. Dist. LEXIS 129749 (S.D.N.Y. Sept. 11, 2013)
(granting request where plaintiff had demonstrated a "potentially meritorious claim and no
ability to enforce it absent expedited discovery…").

### Good Cause for Alternative Service

19.     The Court finds good cause to grant alternative service via email because Playboy
establishes that traditional service methods would be futile. (*see* Hood Decl. ¶ 4-68; McCarthy
Decl. ¶ 57 (the addresses displayed in connection with the Fraudulent Entities are not real, but
fabricated addresses relating to residential locations in order to give the Fraudulent Entities,
Counterfeit Websites, Counterfeit Domains, and Additional Domain the appearance of
legitimacy)); email service is most likely to give Defendants' notice of the lawsuit; and email
service also should be permitted on third parties, because their compliance/cooperation is needed
immediately to effectuate the *ex parte* relief contemplated by this Order.

## I.     TEMPORARY RESTRAINING ORDER

IT IS HEREBY ORDERED, that Defendants, their officers, agents, servants, employees,
and attorneys, and all others in active concert or participation with them, who receive actual
notice of this Order by personal service or otherwise ("Restrained Parties"), are temporarily
restrained and enjoined from, anywhere in the world:

1.  Using or counterfeiting the Playboy Marks, the PLAYBOY© Copyrights, and/or
    associated common law rights, or any confusingly similar marks, reproduction,
    counterfeit copies, or spurious imitations thereof, on or in connection with the offering of

any goods and/or services, licensing services, websites, or social media, including but not limited to, owning or operating the Counterfeit Websites, Additional Domain and/or Counterfeit Domains;

2.   Using or counterfeiting the Playboy Marks and/or PLAYBOY© Copyrights, or any confusingly similar marks, on or in connection with the Fraudulent Entities or the legal name or dba of any entity;

3.   Operating any other website, licensing business or other business, entity, or store that purports to originate from Playboy, or to be sponsored or licensed by, or affiliated with Playboy or Playboy's authentic Website, or contains any portion of the Playboy Marks within its name or d.b.a., when it is not;

4.   Forging, creating, circulating, or otherwise using any documents or materials purporting to be executed by Playboy, or any of its affiliated entities, including but not limited to forging signatures, seals, or other documents;

5.   Registering, owning, or using any domain name that consists of any of the Playboy Marks, or includes "Playboy" in the domain portion of the domain name and is using in connection with the Playboy Marks, PLAYBOY© Copyrights, and/or any other Playboy source identifier, or that is confusingly similar thereto, or that is calculated to confuse consumers into thinking that the website(s) accessible via the domain name(s) originate with/from Playboy, or is sponsored or licensed by, or affiliated with, Playboy or Playboy's authentic Website, when it is/they are not;

6.   Registering, owning, or using any entity whose name or dba consists of the Playboy Marks, or includes "Playboy", or that is confusingly similar to any of the Playboy Marks, or that is calculated to confuse consumers into believing that Defendants are Playboy,

affiliated with Playboy, or sponsored by Playboy, when they are not;

7. Using in connection with Defendants' activities, goods, or services (or purported goods or services) any false or deceptive designations, representations, or descriptions of Defendants or their activities, goods, or services (or purported goods or services), whether by symbols, words, designs, statements, photographs, or other devices, which would damage or injure Playboy or its customers, or which would give Defendants an unfair competitive advantage or result in consumer deception;

8. Committing other acts calculated to cause consumers to believe that Defendants' domain names, websites, web content, goods/or services are offered under the authorization, sponsorship, supervision, or control of Playboy, or otherwise are connected with Playboy, or Playboy's authentic Website, when they are not;

9. Further infringing the Playboy Marks; PLAYBOY© Copyrights, and/or any other Playboy source identifier, or damaging any associated goodwill;

10. Stealing Playboy's customer's or potential customer's, licensees, or potential licensees.

11. Misappropriating that which rightfully belongs to Playboy, its customers or potential customers, or in which Playboy or its customers or potential customers have a proprietary interest;

12. Using, linking to, transferring, selling, exercising control over, or otherwise owning or accessing the Counterfeit Websites, Counterfeit Domains, and Additional Domain.

13. Using, linking to, transferring, selling, exercising control over, or otherwise owning or using the Fraudulent Entities; and

14. Using, transferring, exercising control over, or otherwise accessing any accounts used in the transfer of money or electronic currency, or in the processing of card-based

10

transactions associated with the Counterfeit Websites, Counterfeit Domains, Additional Domain or Fraudulent Entities, as a means to further their fraudulent counterfeiting scheme.

Upon service as provided for in this Order, the Defendants, and other Restrained Parties, shall be deemed to have actual notice of the issuance and terms of the Temporary Restraining Order, and any act by any of the Restrained Parties in violation of any of the terms of the Temporary Restraining Order may be considered and prosecuted as contempt of Court.

### Security for Temporary Restraining Order

**IT IS FURTHER ORDERED** that, pursuant to Federal Rule of Civil Procedure 65, Playboy shall, within three (3) days of entry of this Order, post a bond in the amount of $15,000 as payment of damages to which Defendants may be entitled for wrongful injunction or restraint.

## II.   ACCOUNT AND ASSET FREEZE SEIZURE ORDER

**IT IS FURTHER ORDERED** that Defendants and any Restrained Party having actual notice of this Order shall be temporarily restrained and enjoyed from transferring or disposing of any money or other assets obtained form the ownership or operation of the Counterfeit Websites, Counterfeit Domains, Additional Domain, or otherwise from the operation of Defendants' counterfeit scheme, until further order or this Court.

**IT IS FURTHER ORDERED** that the third-party service providers whose services are used as instrumentalities of Defendants counterfeiting scheme, including domain registries, domain name registrars, web hosts, WHOIS  privacy protection services, payment processors, back-end service providers, banks and merchant account providers, and state agencies through which Defendants' filed the Fraudulent Entities, shall immediately locate all accounts owned or operated by, or otherwise associated with Defendants or the Counterfeit Websites, Additional

Domain, and Counterfeit Domains, and within forty-eight (48) house after receiving actual notice of this Order:

1. Freeze all access of each and every Defendant and any Restrained Party to any of the Fraudulent Entities, Counterfeit Websites, Additional Domain, or Counterfeit Domains, including by temporarily disabling access to said entities, websites, or domain, and making them inaccessible and non-transferrable pending further order of this Court;

2. Take any additional steps described below; and

3. Until all steps have been taken, and this Order has been executed in full, refrain from providing any notice or warning to, and from communicating in any way with Defendants, or their agents or representatives, and refrain from publicizing this Order, except as necessary to communicate with other third parties identified in this Order to execute this Order.

### Additional Steps/Relief Sought from Domain Name Registries

**IT IS FURTHER ORDERED** that, with respect to the Counterfeit Websites, Additional Domain, and Counterfeit Domains, the third-party registries and registrars shall take the following additional steps:

1. Until further order of this Court, maintain as unchanged the WHOIS or similar contact and identifying information as of the time of service of this Order and maintain the domains with the current registrar so as to not pre-emptively provide Defendants with notice of this Action and Order;

2. As soon as possible, but in any event within forty-eight (48) hours of service of this Order, take all steps needed to prevent transfer or modification of the domains by Defendants or third parties at the registrar (e.g. lock them and restrict them from transfers

or modification, and set or reset the serve and client status codes accordingly);

3.  As soon as possible, but in any event within forty-eight (48) hours of service of this Order, take all steps needed to change the content accessible at the domains to text stating that the domain names and former content are frozen and temporarily inaccessible due to Court order, and take other reasonable steps to work with Playboy to ensure the redirection of the domains and inaccessibility of the former, infringing content, and also ensure that Defendants cannot use the domains to continue to host the Counterfeit Websites, Additional Domain, and Counterfeit Domain;

4.  As soon as possible, but in any event within forty-eight (48) hours of service of this Order, notify Playboy via legal counsel what other steps or information is needed to propagate the foregoing actions or changes; and

5.  Immediately preserve all evidence that may be used to identify the specific individuals using and operating the Counterfeit Websites, Additional Domain, and Counterfeit Domains.

### Additional Steps/Relief Sought from Search Engines

**IT IS FURTHER ORDERED** that, with respect to the Defendants, Counterfeit Websites, Additional Domain, and Counterfeit Domains, the third-party Internet search engines shall, within forty-eight (48) hours after receiving actual notice of this Order, disable and cease displaying all advertisements used by or associated with Defendants, the Counterfeit Websites, Additional Domain, and Counterfeit Domains, and take all steps needed to prevent links to Defendants' Counterfeit Websites, Additional Domain, and Counterfeit Domains from displaying in sponsored or organic search results, including but not limited to removing links to the websites from search algorithms or indexes.

## Additional Steps/Relief Sought from Privacy Protection Services re: Disclosing Domain Name Registrants' Identities

**IT IS FURTHER ORDERED** that, with respect to the Counterfeit Websites, Additional Domain, and Counterfeit Domains, within forty-eight (48) hours of receiving actual notice of this Order, the third-party WHOIS privacy protection services shall disclose to Playboy, via its legal counsel, all information concerning the true identifies and contact information of the Counterfeit Websites, Additional Domain, and Counterfeit Domains registrants, administrative contacts, and technical contacts.

The third-party WHOIS privacy protection services shall not, however, remove the privacy protection services from displaying in publicly available WHOIS information, and until further order of this Court, shall maintain as unchanged the WHOIS or similar contact and identifying information as of the time of service of this Order.

## Additional Steps/Relief Sought from Banks and Other Financial Services Providers re: Freezing Financial/Payment Mechanisms

**IT IS FURTHER ORDERED** that, with respect to the Defendants' bank or other financial accounts, or payment processing or merchant accounts, the third-party payment processors and financial institutions shall, within forty-eight (48) hours of receiving actual notice of this Order, freeze, disable, restrain, and enjoin the transfer or disposal of any money, electronic currency, funds, or other assets or property associated with the Defendants, Counterfeit Websites, Additional Domain, and/or Counterfeit Domains, without prior approval of the Court, except as to a Defendant or Restrained Party that files with the Court and serves upon Playboy's counsel:

1. An accounting of such Defendant's or Restrained Party's assets located in the United States having a value of $1,000 or more, and the location and identify thereof; and

2.   Uncontradicted documentary proof accepted by Playboy (such acceptance will not be unreasonably withheld) that particular assets are not proceeds of Defendants' counterfeiting or phishing scheme, in which case those particular assets shall be released to such Defendant or Restrained Party.

### Additional Steps/Relief Sought from Government Agencies

**IT IS FURTHER ORDERED** that, with respect to the Defendants' Fraudulent Entities, all government agencies in connection with registration, maintenance, or recordation of the Defendants' Fraudulent Entities, shall, within forty-eight (48) hours of receiving actual notice of this Order, freeze, disable, restrain, and enjoin any transfer or further filings in connection with said entities; denote the Fraudulent Entities as not being in good standing; and provide Playboy with all forms, and information submitted by Defendants in connection with the registration, maintenance, recordation, or payments made in connection with the Fraudulent Entities.

### Later-Identified Accounts

**IT IS FURTHER ORDERED** that the foregoing asset/account freeze seizure order shall apply to additional domain names, associated websites, entities, and accounts properly brought to this Court's attention and verified by affidavit to be used by the Defendants/individuals using or operating the counterfeit websites/domains/entities for the purposes of making or operating counterfeit Playboy websites, infringing or counterfeiting the Playboy Marks, PLAYBOY© Copyrights, or any intellectual property owned by Playboy at issue in this action, or otherwise violating the temporary restraining order or preliminary injunction (if same is entered in this case).

### Security for Seizure Order

**IT IS FURTHER ORDERED** that, pursuant to 15 U.S.C. § 1116(d)(5)(D), Playboy

15

shall, within three (3) days of entry of this Order, post a bond in the amount of $15,000, as payment of damages to which Defendants may be entitled for wrongful seizure.

## III.   <u>EXPEDITED DISCOVERY ORDER</u>

**IT IS FURTHER ORDERED** that any third-party service provider providing services to Defendants, or in connection with the Counterfeit Websites, Counterfeit Domains, Additional Domain or in connection with the Fraudulent Entities, shall, within five (5) days after being served with or receiving actual notice of this Order, provide to Playboy, via its legal counsel, expedited discovery, including copies of all documents and records in such third party's possession or control relating to:

1. The true identities and addresses of Defendants, and the locations and identifies of the relevant Defendant's operations, including without limitation identifying information associated with the Counterfeit Websites, Counterfeit Domains, Additional Domain, online account, or bank, merchant, or payment processing account(s), and related financial accounts(s), or payment means by which Defendants have registered the Fraudulent Entities;

2. Any and all known internet websites owned or operated by Defendants;

3. Any and all documents related to the registration of the Fraudulent Entities;

4. Any and all known registered entities or businesses owned, registered, or used by Defendants; and

5. Any and all bank, payment processing, or other financial accounts owned or controlled by Defendants, including such accounts residing with or under the control of any banks, savings and loan associations, merchant account providers, payment processors and providers, credit card associations, or other financial institutions that receive or process

16

payments or hold assets on any Defendant's behalf, including Visa, Mastercard, American Express, Discover or other credit cards, PayPal, Bitcoin, Western Union, bank or other third-party payment processing service provider.

## IV.   <u>ORDER PERMITTING ALTERNATIVE SERVICE</u>

**IT IS FURTHER ORDERED THAT,** good cause having been shown, Playboy may serve upon all Defendants and upon any third-party service providers the documents initiating this matter, including the Complaint, Summons(es), *Ex Parte* Motion and supporting papers, Motion to Seal and Order thereon, corporate disclosure statements, and the Orders herein, by email or other electronic means, and/or by overnight courier, using the identifying information set forth in Attachment 1 to the Hood Declaration, to the degree necessary to ensure and effectuate service.

**IT IS FURTHER ORDERED THAT**, good cause having been shown, service of the foregoing papers shall be made on Defendants within ten (10) days of the undersigned date. Service may be made upon any third-party service provider at an earlier date to ensure full execution of the terms of this Order.

## V.   ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION/SEIZURE <u>CONFIRMATION HEARING</u>



**IT IS FURTHER ORDERED** that, on _____ August 12 _____, 2021, at _11:30_____ a.m./p.m., or at such other date and time as may be fixed by the Court pursuant to Fed. R. Civ. P. 65[5] and 15 U.S.C. 1116(d)(10)(A)[6], the Defendants shall appear and show cause and seizure confirmation hearing before the Honorable _____ Victor Marrero _____, United

---

[5] Such date of the hearing is compliant with Fed. R. Civ. P. 65(b)(2) as it is within 14 days of entry of this temporary restraining order, and as such, the temporary restraining order shall remain in effect until the show cause hearing.
[6] Such date of the hearing is compliant with 15 U.S.C. 1116(d)(10)(A) as it has taken place between 10 and 15 days after entry of this Order.

States District Judge of the United States District Court for the Southern District of New York,

via _____teleconference_____, why a preliminary injunction

pursuant to Federal Rule of Civil Procedure 65 should not be granted, which preliminary

injunction would enjoin and restrain the Restrained Parties from directly or indirectly, anywhere

in the world:

15. Using or counterfeiting the Playboy Marks, the PLAYBOY© Copyrights, and/or
    associated common law rights, or any confusingly similar marks, reproduction,
    counterfeit copies, or spurious imitations thereof, on or in connection with the offering of
    any goods and/or services, licensing services, websites, or social media, including but not
    limited to, owning or operating the Counterfeit Website, Additional Domain, and/or
    Counterfeit Domains;

16. Using or counterfeiting the Playboy Marks and/or PLAYBOY© Copyrights, or any
    confusingly similar marks, on or in connection with the Fraudulent Entities or the legal
    name or dba of any entity;

17. Operating any other website, licensing business or other business, entity, or store that
    purports to originate from Playboy, or to be sponsored or licensed by, or affiliated with
    Playboy or Playboy's authentic Website, or contains any portion of the Playboy Marks
    within its name or d.b.a., when it is not;

18. Forging, creating, circulating, or otherwise using any documents or materials purporting
    to be executed by Playboy, or any of its affiliated entities, including but not limited to
    forging signatures, seals, or other documents;

19. Registering, owning, or using any domain name that consists of any of the Playboy
    Marks, or includes "Playboy" in the domain portion of the domain name and is using in

connection with the Playboy Marks, PLAYBOY© Copyrights, and/or any other Playboy source identifier, or that is confusingly similar thereto, or that is calculated to confuse consumers into thinking that the website(s) accessible via the domain name(s) originate with/from Playboy, or is sponsored or licensed by, or affiliated with, Playboy or Playboy's authentic Website, when it is/they are not;

20. Registering, owning, or using any entity whose name or dba consists of the Playboy Marks, or includes "Playboy", or that is confusingly similar to any of the Playboy Marks, or that is calculated to confuse consumers into believing that Defendants are Playboy, affiliated with Playboy, or sponsored by Playboy, when they are not;

21. Using in connection with Defendants' activities, goods, or services (or purported goods or services) any false or deceptive designations, representations, or descriptions of Defendants or their activities, goods, or services (or purported goods or services), whether by symbols, words, designs, statements, photographs, or other devices, which would damage or injure Playboy or its customers, or which would give Defendants an unfair competitive advantage or result in consumer deception;

22. Committing other acts calculated to cause consumers to believe that Defendants' domain names, websites, web content, goods/or services are offered under the authorization, sponsorship, supervision, or control of Playboy, or otherwise are connected with Playboy, or Playboy's authentic Website, when they are not;

23. Further infringing the Playboy Marks; PLAYBOY© Copyrights, and/or any other Playboy source identifier, or damaging any associated goodwill;

24. Stealing Playboy's customer's or potential customer's, licensees, or potential licensees.

25. Misappropriating that which rightfully belongs to Playboy, its customers or potential

customers, or in which Playboy or its customers or potential customers have a proprietary interest;

26. Using, linking to, transferring, selling, exercising control over, or otherwise owning or accessing the Counterfeit Websites, Additional Domain, and Counterfeit Domains.

27. Using, linking to, transferring, selling, exercising control over, or otherwise owning or using the Fraudulent Entities; and

28. Using, transferring, exercising control over, or otherwise accessing any accounts used in the transfer of money or electronic currency, or in the processing of card-based transactions associated with the Counterfeit Websites, Counterfeit Domains, Additional Domain or Fraudulent Entities, as a means to further their fraudulent counterfeiting scheme.

## **Filing/Service of Opposition and Reply Papers**

**IT IS FURTHER ORDERED** that, upon completion of service upon Defendants, the parties shall meet and confer and submit a joint proposed briefing schedule within two (2) days of the date of service. In accordance with the schedule, as approved by the Court, opposition papers, if any, shall be filed by Defendants with this Court and served by personal service, notice of electronic filing, facsimile, or email upon Playboy's legal counsel, Venable LLP, at their offices at 1270 Avenue of the Americas, 24th Floor, New York, NY 10020,  and reply papers shall be filed and served in the equivalent manner.

## **Failure to Oppose May Result in Preliminary Injunction**

**IT IS FURTHER ORDERED THAT**, Defendants are hereby put on notice that failure to attend the preliminary injunction hearing scheduled herein may result in the issuance of a preliminary injunction, and that failure of Defendants to oppose the preliminary injunction, may

result in the issuance of a preliminary injunction, which shall extend through the pendency of

this action, depending on whether or not Defendants' appear as directed for the preliminary

injunction hearing. The Restrained Parties shall be deemed to have actual notice of the issuance

and terms of the preliminary injunction, and any act by any of the Restrained Parties in violation

of any of the terms of the preliminary injunction may be considered and prosecuted as contempt

of Court.

## VI.      PAPERS/PROCEEDINGS TO REMAIN UNDER SEAL

**IT IS FURTHER ORDERED** that all papers submitted in this action shall be filed with

the Clerk of Court under seal and shall remain filed under seal until further order of this Court.

The parties are directed to inform the Court within two (2) days of the

completion of service their position as to whether this matter should

remain under seal via joint submission.

## VII.     ORDER OF REFERRAL TO U.S. ATTORNEY, NEW YORK ATTORNEY GENERAL'S OFFICE, CALIFORNIA ATTORNEY GENERAL'S OFFICE, GEORGIA ATTORNEY GENERAL'S OFFICE, AND COLORADO ATTORNEY GENERAL'S OFFICE

**IT IS FURTHER ORDERED** that a copy of this order may be served on the U.S. Attorney for

the Southern District of New York, New York Attorney General's Office,

California Attorney General's Office, Georgia Attorney General's Office, and Colorado Attorney

General's Office for evaluation of whether criminal charges are appropriate for Defendants'

scheme involving counterfeiting, Fraudulent Entities, and forged documents as described above.


**SO ORDERED**, this   29   day of   July   2021

Victor Marrero
U.S.D.J.