IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 11/5/2021
```

PLAYBOY ENTERPRISES
INTERNATIONAL, INC.,

               Plaintiff,

v.

PLAYBOY ENTERPRISES, INC., et al..

               Defendants.

No. 1:21-cv-06419-VM

***EX PARTE* TEMPORARY RESTRAINING ORDER, EXPEDITED DISCOVERY ORDER, ORDER GRANTING ALTERNATIVE SERVICE, AND ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION**

Plaintiff Playboy Enterprises International, Inc. ("Playboy")[1] filed its original complaint to stop the Original Defendants[2] from stealing the contents of Playboy's Website, counterfeiting the Playboy trademarks and PLAYBOY© Copyrights, forging documents and registering fraudulent entities in furtherance of their unlawful acts.

---

[1] All undefined terms herein have the same meaning as in Plaintiff's Amended Complaint.

[2] Defined as Playboy Enterprises, Inc.; PLBY Group, Inc.; Junhan Huang, aka John Huang; Mountain Crest Acquisition Corp., Playboy Enterprises (Asia) Limited; Wong's Capital Holding Group Limited; Playboy (China) Brand Management Center; Playboy Tobacco Group Limited; Huahua Rabbit (Xiamen) Health Science and Technology Co., Ltd.; Haihan Fashion (Shanghai) Enterprises Development Co., Ltd., Bunny Owner Group; Bunnygirl Certification Institute; Bunny Girl Foundation; Bunny Girl Union; Bunny Hunter LLC; International Model Certification Association; Playboy Enterprises International, Inc.; Pleasure International Corp.; Wong's Bank Group; Wong's Foundation; Wong's International Bank; Wong's Syndicate; World Future Leader University; World Industrial Capital Organization, Fu Manhua, Ming Cai, Lingling Zhang, and John Fu.

Playboy filed its Complaint under: (1) the Lanham Act (15 U.S.C. §§ 1114, 1125(a), 1116) (Counts I and III); (2) the Copyright Act (17 U.S.C. 101, et seq. 502) (Count II), and (3) trademark and unfair competition under New York common law (Count IV).

Simultaneous with filing its original Complaint, Playboy moved against the original Defendants, under seal, for emergency *ex parte* relief in the form of a temporary restraining order, account and asset freeze order, expedited discovery order, order granting alternative service, and order to show cause why a preliminary injunction should not be granted.

On July 29, 2021, the Court granted Playboy's application, entering a temporary restraining order among other relief. *See* ECF 18. Following a preliminary injunction hearing on August 12, 2021, the court then granted Playboy's request for a preliminary injunction against the Original Defendants. *See* ECF 24.

Since entering those orders, Playboy has filed an Amended Complaint in this action on October 30, 2021 adding five New Defendants to this action: (1) Huase Space (Fujian) Brand Management Co., Ltd.; (2) King Wong; (3) Kai Ming LAI; (4) Flower Color Space (Fujian) Brand Management Company Ltd., and (5) Fancy Space (Fujian) Brand Management Co. Ltd. ("New Defendants"). *See* ECF 25.

Playboy's Amended Complaint and this Application demonstrate that the New Defendants have undertaken new infringing and fraudulent actions in furtherance of the original Defendants' counterfeiting scheme. Playboy now moves for *ex parte* relief against the New Defendants in the form of:

1. A temporary restraining order, which should be granted[3] if Playboy establishes:

    a. A likelihood of success on the merits;

    b. Irreparable harm without the entry of a temporary restraining order;

    c. That the balance of hardships tips in Playboy's favor; and

    d. That the public interest would be served by the entry of a temporary restraining order

2. An expedited discovery order;

3. An order granting alternative service by email or other electronic means; and

4. An order to show cause why a preliminary injunction should not be granted ("*Ex Parte* Application").  Having reviewed Playboy's original complaint, Amended Complaint, the *Ex Parte* Application and all supporting declarations and exhibits thereto,

**THE COURT HEREBY FINDS THAT:**

**Jurisdiction and Venue**

1. This Court has subject matter jurisdiction over Playboy's claims under 28 U.S.C. §§ 1331 & 1338, and 15 U.S.C. § 1121.

2. This Court has personal jurisdiction over the New Defendants because:

    a. The Court will be considering matters related to Defendants' registration of Fraudulent Entities and addresses in this district and within New York state as well as other states;

---

[3] *See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Seijas v. Republic of Argentina*, 352 Fed. App'x. 519, 521 (2d Cir. 2009).

    b. The Defendants are operating the Counterfeit Websites[4] accessible and interactive to users in this district and within New York state; and

    c. Playboy's Complaint and moving papers demonstrate that Defendants undertook the unlawful counterfeiting scheme with knowledge that they would cause consumers and Playboy harm through the Counterfeit Websites accessible to consumers in New York as Playboy does business in New York and has done business in New York for dozens of years.

*See* Amended Complaint ¶¶ 15-22; Brief Simultaneously Filed I.S.O. *Ex Parte* Application ("Brief"), pp 7-8.

3. Venue is proper in this judicial district in the Southern District of New York (see 28 U.S.C. § 1391) because:

    a. A substantial part of the conduct and the property at issue is located in this jurisdiction. Defendants' have registered Fraudulent Entities with addresses located in this judicial district in furtherance of their counterfeiting scheme.

    b. Additionally, the Complaint alleges facts to show that Defendants are subject to personal jurisdiction in this judicial district, and no other district appears more appropriately suited to resolve this dispute.

*See* Amended Complaint ¶ 23.

4. The Complaint pleads sufficient facts and states claims against the New Defendants for:

---

[4] Defined as www.playboychinabrand.com, and www.playboygo.com.

a. Trademark counterfeiting, unfair competition, and false designation of origin, in violation of the Lanham Act, Sections 32 and 43(a) (15 U.S.C. §§ 1114, 1125(a) (Counts I and IV);

b. Copyright infringement, in violation of the Copyright Act (17 U.S.C. §§ 101 et seq.) (Count III); and

c. Trademark infringement and unfair competition in violation of New York common law (Count IV).

**Likelihood of Success on the Merits of Playboy's Claims in the Complaint**

5. Playboy is likely to succeed on the merits of these claims because Playboy has shown that:

a. It owns the registered Playboy Marks[5] and associated common-law rights (Amended Complaint ¶¶ 161-176, Ex. 4; Declaration of Jennifer McCarthy [ECF 17 ("McCarthy I Decl."), ¶¶ 12-30; Declaration of Jennifer McCarthy simultaneously filed ("McCarthy II Decl."), ¶ 10.a-b).

b. Defendants' fraudulent scheme involves counterfeiting those exact trademarks for the exact online retail store services and goods as Playboy, thereby confusing customers (Amended Complaint ¶¶ 182-222, Ex.7; McCarthy I Decl. ¶¶ 31-62; McCarthy II Decl. ¶ 10.c) (*See* 15 U.S.C. §§ 1114(1), 1125(a));

---

[5] Defined as the PLAYBOY® Trademarks, RABBIT HEAD DESIGN® Trademarks, BUNNY STORE® Trademark, PLBY® Trademark, and PLEASURE FOR ALL® Trademarks collectively, along with their common low rights, as defined in Playboy's Complaint.

    c. Playboy owns the registered copyrights in the PLAYBOY© Copyrights[6] (Amended Complaint ¶¶ 177-181, Ex. 5; McCarthy I Decl. ¶¶ 63-67; McCarthy II Decl. ¶ 10.d).

    d. In creating the Counterfeit Websites Defendants directly copied and infringed Playboy's copyrighted content, including but not limited to the PLAYBOY© Copyrights (Amended Complaint ¶¶ 182-222, Ex. 8; McCarthy Decl.¶ 68-71; McCarthy Decl. II ¶ 10.e) (*See* 17 U.S.C. § 106); and

    e. The Defendants, through the New Defendants, have continued to infringe the Playboy Marks since the filing of Playboy's original complaint and preliminary injunction order (Amended Complaint ¶¶ 244-266, Exs 10-12; McCarthy Decl. II ¶¶ 11-36, Exs. A-C).

Playboy also has established a likelihood of success on the merits of its New York common law trademark infringement and unfair competition claims because the elements of those mirror the elements of Lanham Act trademark infringement and unfair competition claims, and Playboy is likely to succeed on the merits of its Lanham Act claims. *Avon Prods. V. S.C. Johnson & Son*, 984 F. Supp. 768, 800 (S.D.N.Y. 1997); *Twentieth Century Fox Film Corp. v. Marvel Enters.*, 220 F. Supp. 2d 289 (S.D.N.Y. 2002); *Franklin v. X Gear 101, LLC*, 17 Civ. 6452 (GBD) (GWG) 2018 U.S. Dist. LEXIS 122658 (S.D.N.Y. July 23, 2018).

## **Irreparable Harm**

6.    Playboy also has established that it will suffer immediate, irreparable harm if this Court denies this *ex parte* Application. Specifically, it has shown that it has a strong reputation

---

[6] Defined as U.S. Copyright Registration Nos. VA 2-144-651, and VA 2-174-035.

and goodwill under the Playboy Marks (and other source identifiers), which was established due to Playboy's lengthy and (until now) exclusive use of those marks in connection with Playboy's authentic Website, goods and services. *See* McCarthy I Decl. ¶¶ 91-100; McCarthy II Decl. ¶¶ 37-40.

7. Defendants have exploited Playboy's reputation and goodwill, using it to trick the public, consumers, government agencies, and potential licensees into thinking that Defendants are affiliated with, or authorized by, Playboy when they are not.

8. Namely, Playboy has shown that the New Defendants have filed a fraudulent statement of information document ("Fraudulent SOI") with the California Secretary of State purporting to be on behalf of Plaintiff Playboy, when it was not.

9. The New Defendants then used the Fraudulent SOI to license the Playboy Marks to others without authorization from Playboy. McCarthy II Decl. ¶¶ 20-32.

10. Playboy has shown that consumers access Defendants' Counterfeit Websites and/or Counterfeit Domains[7] only because they think Defendants' Counterfeit Websites and/or Counterfeit Domains are Playboy-affiliated.

11. If consumers come to think they cannot trust Playboy or Playboy's authentic Website because of Defendants' actions, then Playboy's reputation and goodwill will erode – that is the definition of irreparable harm. *See* McCarthy I Decl. ¶ 91.

12. Defendants' creation of multiple Fraudulent Entities using the Playboy Marks without authorization, Defendants' use of forged documents purporting to be executed by

---

[7] Defined as www.playboy.com.hk, www.playboyint.com, and www.playboylicense.com.

Playboy, and Defendants' creation of the Additional Domain[8] is likely to have lasting irreparable harm on Playboy's licensing business in the United States and overseas. McCarthy II ¶¶ Decl. 37-39.

### Balance of the Hardships

13. Playboy also has shown that the balance of hardships tips in its favor.

14. Playboy has a protectable legal interest in protecting its reputation under the Playboy Marks, PLAYBOY© Copyrights, and other source identifiers.

15. By contrast, there is no evidence showing that Defendants have any protectable interest in counterfeiting those source identifiers to defraud Playboy out of the control over its intellectual property. *AW Licensing, LLC v. Bao*, No. 15-cv-1373, 2015 U.S. Dist. LEXIS 177101 (S.D.N.Y. April 2, 2015)

### Public Interest

16. Playboy also has shown that the public interest favors granting the *Ex Parte* Application. The public has a strong interest in being protected from confusion in general. But the public has an even stronger interest in being protected from illegal phishing schemes, namely, being manipulated through trademark counterfeiting into believing that they are doing business with Playboy, when they are not.

### Good Cause for Expedited Discovery

17. The Court also finds good cause to grant expedited discovery.

18. The New Defendants succeed in their scheme, in part, because they operate anonymously using residential addresses that do not correspond to the businesses that they

---

[8] Defined as http://www.papaintl.com/.

purport to be.

19.     The New Defendants and any third parties should be compelled, immediately, to disclose Defendants' identities.

20.     Expedited discovery will provide certain information about the New Defendants' counterfeiting scheme via third-party instrumentalities, so these instrumentalities can be shut down, so evidence can be preserved for trial, and so this Court can grant effective final relief. *Streamlight, Inc. v. Gindi*, 18-CV-987 (NG) (E.D.N.Y. April 23, 2018) (granting expedited discovery where the plaintiffs sought to identify all persons involved in the counterfeiting); *Dentsply Sirona Inc. v. LIK Supply, Corp.*, 3:16-cv-00806 (MAD/DEP) (N.D.N.Y. July 15, 2016) (granting expedited discovery where the plaintiff was unable to ascertain the extent of the defendants' counterfeiting without it); *Admarketplace, Inc. v. Tee Support, Inc.*, 13-civ-5635-LGS 2013 U.S. Dist. LEXIS 129749 (S.D.N.Y. Sept. 11, 2013).

### Good Cause for Alternative Service

21.     The Court finds good cause to grant alternative service on the New Defendants via email because Playboy establishes that traditional service methods would be futile. *See* Amended Complaint, Ex. 11 (demonstrating that the New Defendants are using falsely using Plaintiff Playboy's physical address as their own).

22.     Email service is most likely to give the New Defendants notice of the lawsuit, and the Original Defendants notice of this order; and email service also should be permitted on third parties, because their compliance/cooperation is needed immediately to effectuate the *ex parte* relief contemplated by this Order.

**I.     TEMPORARY RESTRAINING ORDER**

IT IS HEREBY ORDERED, that Defendants, including the New Defendants, their

officers, agents, servants, employees, and attorneys, and all others in active concert or participation with them, who receive actual notice of this Order by personal service or otherwise ("Restrained Parties"), are temporarily restrained and enjoined from, anywhere in the world:

1. Using or counterfeiting the Playboy Marks, the PLAYBOY© Copyrights, and/or associated common law rights, or any confusingly similar marks, reproduction, counterfeit copies, or spurious imitations thereof, on or in connection with the offering of any goods and/or services, licensing services, websites, or social media, including but not limited to, owning or operating the Counterfeit Websites, Additional Domain and/or Counterfeit Domains;

2. Using or counterfeiting the Playboy Marks and/or PLAYBOY© Copyrights, or any confusingly similar marks, on or in connection with the Fraudulent Entities or the legal name or dba of any entity;

3. Operating any other website, licensing business or other business, entity, or store that purports to originate from Playboy, or to be sponsored or licensed by, or affiliated with Playboy or Playboy's authentic Website, or contains any portion of the Playboy Marks within its name or d.b.a., when it is not;

4. Forging, creating, circulating, or otherwise using any documents or materials purporting to be executed by Playboy, or any of its affiliated entities, including but not limited to forging signatures, seals, or other documents;

5. Filing any document with any organization, including but not limited to U.S. domestic government agencies, and/or foreign governments or governmental agencies, purporting to be on behalf of Playboy;

6. Forging, creating, circulating, or otherwise using any documents or materials purporting

to be issued by any U.S. domestic government agencies, and/or foreign governments or governmental agencies in connection with Playboy and its business, including but not limited to trademark registration certificates, or copyright registration certificates;

7. Registering, owning, or using any domain name that consists of any of the Playboy Marks, or includes "Playboy" in the domain portion of the domain name and is using in connection with the Playboy Marks, PLAYBOY© Copyrights, and/or any other Playboy source identifier, or that is confusingly similar thereto, or that is calculated to confuse consumers into thinking that the website(s) accessible via the domain name(s) originate with/from Playboy, or is sponsored or licensed by, or affiliated with, Playboy or Playboy's authentic Website, when it is/they are not;

8. Registering, owning, or using any entity whose name or dba consists of the Playboy Marks, or includes "Playboy", or that is confusingly similar to any of the Playboy Marks, or that is calculated to confuse consumers into believing that Defendants are Playboy, affiliated with Playboy, or sponsored by Playboy, when they are not;

9. Using in connection with Defendants' activities, goods, or services (or purported goods or services) any false or deceptive designations, representations, or descriptions of Defendants or their activities, goods, or services (or purported goods or services), whether by symbols, words, designs, statements, photographs, or other devices, which would damage or injure Playboy or its customers, or which would give Defendants an unfair competitive advantage or result in consumer deception;

10. Committing other acts calculated to cause consumers to believe that Defendants' domain names, websites, web content, goods/or services are offered under the authorization, sponsorship, supervision, or control of Playboy, or otherwise are connected with Playboy,

or Playboy's authentic Website, when they are not;

11. Further infringing the Playboy Marks; PLAYBOY© Copyrights, and/or any other Playboy source identifier, or damaging any associated goodwill;

12. Stealing Playboy's customer's or potential customer's, licensees, or potential licensees.

13. Misappropriating that which rightfully belongs to Playboy, its customers or potential customers, or in which Playboy or its customers or potential customers have a proprietary interest;

14. Using, linking to, transferring, selling, exercising control over, or otherwise owning or accessing the Counterfeit Websites, Counterfeit Domains, and Additional Domain.

15. Using, linking to, transferring, selling, exercising control over, or otherwise owning or using the Fraudulent Entities;

16. Using, transferring, exercising control over, or otherwise accessing any accounts used in the transfer of money or electronic currency, or in the processing of card-based transactions associated with the Counterfeit Websites, Counterfeit Domains, Additional Domain or Fraudulent Entities, as a means to further their fraudulent counterfeiting scheme.

Upon service as provided for in this Order, the Defendants, and other Restrained Parties, shall be deemed to have actual notice of the issuance and terms of the Temporary Restraining Order, and any act by any of the Restrained Parties in violation of any of the terms of the Temporary Restraining Order may be considered and prosecuted as contempt of Court.

In connection with this Order, the Court further finds and declares that:

1. the Defendants, including New Defendants HuaSe Space (Fujian) Brand Management Co., Ltd., King Wong, Kai Ming LAI, Flower Color Space (Fujian) Brand

Management Company Ltd., and Fancy Space (Fujian) Brand Management Co. Ltd. have never acquired any authorization from Plaintiff Playboy Enterprises International, Inc. to act on its behalf;

2. The trademark authorization letters issued by the Defendants, including New Defendants HuaSe Space (Fujian) Brand Management Co., Ltd., King Wong, Kai Ming LAI, Flower Color Space (Fujian) Brand Management Company Ltd., and Fancy Space (Fujian) Brand Management Co. Ltd. were not issued by Plaintiff Playboy Enterprises International, Inc.;

3. New Defendant King Wong has never been the Chief Financial Officer of Plaintiff Playboy Enterprises International, Inc.

4. New Defendant King Wong has no right to sign any documents on behalf of Plaintiff Playboy Enterprises International, Inc.;

5. New Defendant Kai Ming LAI has never been the Chief Executive Officer of Plaintiff Playboy Enterprises International, Inc.

6. New Defendant Kai Ming LAI has no right to sign any documents on behalf of Plaintiff Playboy Enterprises International, Inc.;

7. Representatives for New Defendants HuaSe Space (Fujian) Brand Management Co., Ltd., Flower Color Space (Fujian) Brand Management Company Ltd., and Fancy Space (Fujian) Brand Management Co. Ltd. have no right to sign any documents on behalf of Plaintiff Playboy Enterprises International, Inc.

8. The Defendants, including New Defendants King Wong, Kai Ming LAI, HuaSe Space (Fujian) Brand Management Co., Ltd., Flower Color Space (Fujian) Brand Management Company Ltd., and Fancy Space (Fujian) Brand Management Co. Ltd.

are prohibited from acting on behalf of Plaintiff Playboy Enterprises International, Inc.; and

9. The Defendants, including New Defendants King Wong, Kai Ming LAI, HuaSe Space (Fujian) Brand Management Co., Ltd., Flower Color Space (Fujian) Brand Management Company Ltd., and Fancy Space (Fujian) Brand Management Co. Ltd. are not in possession of, or in control of, any authentic trademark registration certificates belonging to Plaintiff Playboy Enterprises International, Inc.

## Security for Temporary Restraining Order

**IT IS FURTHER ORDERED** that, pursuant to Federal Rule of Civil Procedure 65, Playboy shall, within three (3) days of entry of this Order, post a bond in the amount of $15,000 as payment of damages to which Defendants may be entitled for wrongful injunction or restraint.

## II.  EXPEDITED DISCOVERY ORDER

**IT IS FURTHER ORDERED** that any third-party service provider providing services to Defendants, New Defendants, or in connection with the Counterfeit Websites, Counterfeit Domains, Additional Domain, Fraudulent Entities, or in connection with the Fraudulent SOI, shall, within five (5) days after being served with or receiving actual notice of this Order, provide to Playboy, via its legal counsel, expedited discovery, including copies of all documents and records in such third party's possession or control relating to:

1. The true identities and addresses of the New Defendants, and the locations and identifies of the relevant Defendant's operations, including without limitation identifying information associated with the Counterfeit Websites, Counterfeit Domains, Additional Domain, online account, or bank, merchant, or payment processing account(s), and related financial accounts(s), or payment means by which Defendants have registered the

    Fraudulent Entities, or submitted the Fraudulent SOI;

2. Any and all known internet websites owned or operated by Defendants;

3. Any and all documents related to the registration of the Fraudulent Entities;

4. Any and all documents related to the Fraudulent SOI;

5. Any and all known registered entities or businesses owned, registered, or used by Defendants; and

6. Any and all bank, payment processing, or other financial accounts owned or controlled by Defendants, including such accounts residing with or under the control of any banks, savings and loan associations, merchant account providers, payment processors and providers, credit card associations, or other financial institutions that receive or process payments or hold assets on any Defendant's behalf, including Visa, Mastercard, American Express, Discover or other credit cards, PayPal, Bitcoin, Western Union, bank or other third-party payment processing service provider.

## III. ORDER PERMITTING ALTERNATIVE SERVICE

**IT IS FURTHER ORDERED THAT,** good cause having been shown, Playboy may serve upon all Defendants and upon any third-party service providers the documents initiating this matter, including the Amended Complaint, Summons(es), *Ex Parte* Application and supporting papers, and the Orders herein, by email or other electronic means, and/or by overnight courier, using the identifying information set forth in Attachment 1 to the Hood Declaration [ECF 16-1], and email addresses king.w198511@gmail.com, huodoo@gmail.com, and akosikey247@gmail.com[9] to the degree necessary to ensure and effectuate service.

---

[9] As previously detailed in the Affidavit of Service signed by John Hood [ECF 21], the email akosikey247@gmail.com also is believed to be associated with the Defendants.

15

**IT IS FURTHER ORDERED THAT**, good cause having been shown, service of the foregoing papers shall be made on Defendants within ten (10) days of the undersigned date. Service may be made upon any third-party service provider at an earlier date to ensure full execution of the terms of this Order.

### IV. ORDER TO SHOW CAUSE RE: PRELIMINARY INJUNCTION/SEIZURE CONFIRMATION HEARING

**IT IS FURTHER ORDERED** that, on November 12, 2021, at 9:30 a.m., or at such other date and time as may be fixed by the Court pursuant to Fed. R. Civ. P. 65[10], the Defendants shall appear and show cause hearing before the Honorable Victor Marrero, United States District Judge of the United States District Court for the Southern District of New York, via teleconference, why a preliminary injunction pursuant to Federal Rule of Civil Procedure 65 should not be granted,

**IT IS FURTHER ORDERED** that, upon completion of service upon Defendants, the parties shall meet and confer and submit a joint proposed briefing schedule within two (2) days of the date of service. In accordance with the schedule, as approved by the Court, opposition papers, if any, be filed by Defendants with this Court and served by personal service, notice of electronic filing, facsimile, or email upon Playboy's legal counsel, Venable LLP, at their offices at 1270 Avenue of the Americas, 24th Floor, New York, NY 10020, and reply papers shall be filed and served in the equivalent manner.

---

[10] Such date of the hearing is compliant with Fed. R. Civ. P. 65(b)(2) as it is within 14 days of entry of this temporary restraining order, and as such, the temporary restraining order shall remain in effect until the show cause hearing.

**<u>Failure to Oppose Will Result in Preliminary Injunction</u>**

IT IS FURTHER ORDERED THAT, Defendants, including the New Defendants are hereby put on notice that failure to attend the preliminary injunction hearing scheduled herein shall result in the issuance of a preliminary injunction, and that failure to oppose the preliminary injunction may result in the issuance of a preliminary injunction, which shall extend through the pendency of this action, depending on whether or not Defendants' appear as directed for the preliminary injunction hearing.

    The Restrained Parties shall be deemed to have actual notice of the issuance and terms of the preliminary injunction along the lines of the terms within the temporary restraining order above, and any act by any of the Restrained Parties in violation of any of the terms of the preliminary injunction may be considered and prosecuted as contempt of Court.

**SO ORDERED**

Date: November 5, 2021
      New York, New York

_____
Victor Marrero
U.S.D.J.