**IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK**

| USDC SDNY |
| --- |
| DOCUMENT |
| ELECTRONICALLY FILED |
| DOC #:_____ |
| DATE FILED:  5/6/2022 |

PLAYBOY ENTERPRISES INTERNATIONAL, INC.,

                  Plaintiff,

      v.

PLAYBOY ENTERPRISES, INC.; PLBY GROUP, INC.; JUNHAN HUANG, AKA JOHN HUANG; MOUNTAIN CREST ACQUISITION CORP.; PLAYBOY ENTERPRISES (ASIA) LIMITED; WONG'S CAPITAL HOLDING GROUP LIMITED; PLAYBOY (CHINA) BRAND MANAGEMENT CENTER; PLAYBOY TOBACCO GROUP LIMITED; HUAHUA RABBIT (XIAMEN) HEALTH SCIENCE AND TECHNOLOGY CO., LTD; HAIHAN FASHION (SHANGHAI) ENTERPRISES DEVELOPMENT CO., LTD.; BUNNIES OWNER GROUP; BUNNYGIRL CERTIFICATION INSTITUTE; BUNNY GIRL FOUNDATION, BUNNY GIRL UNION; BUNNY HUNTER, LLC; INTERNATIONAL MODEL CERTIFICATION ASSOCIATION; PLAYBOY ENTERPRISES INTERNATIONAL, INC.; PLEASURE INTERNATIONAL, CORP.; WONG'S BANK GROUP; WONG'S FOUNDATION; WONG'S INTERNATIONAL BANK; WONG'S SYNDICATE; WORLD FUTURE LEADER UNIVERSITY; WORLD INDUSTRIAL CAPITAL ORGANIZATION; FU MANHUA; MING CAI; LINGLING ZHANG; JOHN FU; E-MODE LIMITED; HUASE SPACE (FUJIAN) BRAND MANAGEMENT CO., LTD.; KING WONG; KAI MING LAI; FLOWER COLOR SPACE (FUJIAN) BRAND MANAGEMENT COMPANY LTD.; and FANCY SPACE (FUJIAN) BRAND MANAGEMENT CO. LTD.

                  Defendants.

:
:
:
:
:
:
:
:

No. 21-cv-06419-VM

**ORDER MODIFYING PRELIMINARY INJUNCTION**

Plaintiff Playboy Enterprises International, Inc. ("Playboy")[1] requests that the November 13, 2021 Preliminary Injunction Order [ECF 44] ("November P.I. Order")  be modified to (1) clarify that it applies to individuals and entities acting in concert with the Defendants, namely Xiaotusky (Shenzhen) Biological Technology Co., Ltd. ("Xiaotusky"), and the Xiaotusky Associates[2], (2) declare that the Defendants, and those acting in concert with them, including Xiaotusky and the Xiaotusky Associates, be prohibited from using the Invalid Notarizations[3] in any way; and (3) declare that the Invalid Notarizations were notarized entirely remotely contrary to California law and are invalid.

Upon Playboy's filings to date, the Affidavit of Olivia Liu duly sworn to on April 20, 2022 and its accompanying exhibits ("Liu Affidavit"), the Declaration of Jennifer McCarthy executed on April 25, 2022 ("McCarthy Decl."), and Playboy's Memorandum of Law, Playboy's motion to modify the November P.I. Order (Dkt. No. 46) is **GRANTED**.

**THE COURT HEREBY FINDS THAT:**

1.      Playboy filed its original complaint on July 22, 2021 to stop the Original

---

[1] All undefined terms herein have the same meaning as in Plaintiff's Amended Complaint.

[2] Defined as Shenzhen Zhuoran Intellectual Property Agency Co., Ltd.; Lin Da Rong; Xiaotusky (Guangzhou) Enterprise Development Co., Ltd; Fu Limei; Rabbit Grandpa (Hainan ) Brand Management Co., Ltd; Chen Jian; Xiaotusky (Shenzhen) Biotechnology Co., Ltd. ("Xiaotusky Biotechnology"); Xiaotusky (Shenzhen) Trading Company Ltd. ("Xiaotusky Trading"); Xiaotusky (Shenzhen) Brand Management Co., Ltd. ("Xiaotusky Brand"); and Huahua Rabbit (Hangzhou) E-commerce Co., Ltd.

[3] The Invalid Notarizations consist of (1) the Fake Authorization Letter to Xiaotusky; (2) the Fake Authorization Letter to Flower Color Space; and (3) the Fake Certificate of Incumbency as defined herein.

Defendants[4] from stealing the contents of Playboy's Website, counterfeiting the Playboy trademarks and PLAYBOY© Copyrights, forging documents and registering fraudulent entities all in furtherance of their unlawful acts under: (1) the Lanham Act (15 U.S.C. §§ 1114, 1125(a), 1116) (Counts I and III); (2) the Copyright Act (17 U.S.C. 101, et seq. 502) (Count II), and (3) trademark and unfair competition under New York common law (Count IV).

2.      Playboy's claims relate to the Original Defendants' infringing conduct in registering multiple fraudulent entities with names using Playboy's registered trademarks in five U.S. states.

3.      Defendants have used Playboy's registered trademarks and copyrighted material on counterfeit websites to falsely state that Defendants were authorized or affiliated with Playboy when they are not.

4.      Playboy simultaneously moved for emergency *ex parte* relief in the form of a temporary restraining order, account and asset freeze order, expedited discovery order, order granting alternative service, and order to show cause why a preliminary injunction should not be granted (Playboy's "Application").

_____

[4] Defined as Playboy Enterprises, Inc.; PLBY Group, Inc.; Junhan Huang, aka John Huang; Mountain Crest Acquisition Corp., Playboy Enterprises (Asia) Limited; Wong's Capital Holding Group Limited; Playboy (China) Brand Management Center; Playboy Tobacco Group Limited; Huahua Rabbit (Xiamen) Health Science and Technology Co., Ltd.; Haihan Fashion (Shanghai) Enterprises Development Co., Ltd., Bunny Owner Group; Bunnygirl Certification Institute; Bunny Girl Foundation; Bunny Girl Union; Bunny Hunter LLC; International Model Certification Association; Playboy Enterprises International, Inc.; Pleasure International Corp.; Wong's Bank Group; Wong's Foundation; Wong's International Bank; Wong's Syndicate; World Future Leader University; World Industrial Capital Organization, Fu Manhua, Ming Cai, Lingling Zhang, and John Fu.

5.     On July 29, 2021, the Court granted Playboy's Application, entering a temporary restraining order among other relief. *See* ECF 18.

6.     On August 12, 2021, the Court granted Playboy's request for a preliminary injunction against the Original Defendants. *See* ECF 24.

7.     On October 30, 2021 Playboy filed an Amended Complaint adding five New Defendants to this action[5] after Playboy discovered that the New Defendants filed a fraudulent Statement of Information ("Fraudulent SOI") with the State of California.

8.     The Fraudulent SOI was filed purportedly on Playboy's behalf and changed the Chief Executive Officer from the real CEO to Defendant Kai Ming LAI and changed the Chief Financial Officer from the real CFO to Defendant King Wong without Playboy's authorization. *See* ECF 25.

9.     Playboy filed an application for a temporary restraining order, and preliminary injunction against the New Defendants and the Original Defendants (together "Defendants") and the November P.I. Order was granted on November 13, 2021. *See* ECF 44.

10.    The November P.I. Order explicitly contemplated seeking modification based on newly discovered infringing activities stating in relevant part:

> In the event Playboy identifies additional counterfeit websites, domains, defendants or fraudulent entities in connection with Defendants' counterfeiting scheme, Playboy may move the Court for an order modifying this injunction as appropriate and may amend its complaint to include the additional parties.

November P.I. Order, at 13.

---

[5] Defined as Huase Space (Fujian) Brand Management Co., Ltd.; King Wong; Kai Ming LAI; Flower Color Space (Fujian) Brand Management Company Ltd., and Fancy Space (Fujian) Brand Management Co. Ltd.

11.     Playboy served the November P.I. Order on all the Defendants via email in the matter permitted by the Court's order. *See* ECF 45 (affidavit of service).

12.     Playboy has discovered new evidence that the Defendants through Defendant Huase Space (Fujian) Brand Management Co., Ltd. ("Huase Space") attempted to record a trademark license with the China National Intellectual Property Administration ("CNIPA") purporting to be authorized on behalf of Playboy, when in fact it was not. *See* McCarthy Decl., ¶ 12.

13.     In response to inquiries from the CNIPA as to their affiliation with Playboy, Defendant Huase Space, and its affiliated entity Defendant Flower Color Space (Fujian) Brand Management Company Ltd. ("Flower Color Space") submitted a response to the CNIPA attaching various falsely notarized and apostilled documents purporting to be executed on behalf of Playboy, signed by Defendant King Wong.  McCarthy Decl., ¶ 13.

14.     The documents submitted by the Defendants to the CNIPA purporting to be on behalf of Playboy were notarized by California notary Olivia Liu, and bore her notary stamp and commission number, and were apostilled in California. *Id.* ¶ 14.

15.     Playboy served a Rule 45 third party subpoena on Olivia Liu, the notary whose stamp, signature, and commission number appears on the documents submitted by the Defendants to the CNIPA. *Id.* at 16; *see also* Liu Affidavit, ¶¶ 4-5, Ex. 1.

16.     Ms. Liu responded to the subpoena by producing various documents and video clips. *See* Liu Affidavit, ¶¶ 4-10, Exs. 1-4; McCarthy Decl. ¶ 17.

17.     The pre-recorded video clips displayed an individual representing himself to be King Wong, and the individual appeared to hold up and sign various documents purporting to be on behalf of Playboy. Liu Affidavit, Ex. 4.

18.     A summary of the details of the "Invalid Notarizations" produced by Ms. Liu in response to Playboy's Rule 45 subpoena is below (*see* McCarthy Decl. ¶ 18; Liu Affidavit ¶ 9, Ex. 3):

| | Apostille Number of Invalid Notarization | Document Description |
|---|---|---|
| 1. Fake Authorization Letter to Xiaotusky | 20198 | Document purporting to give trademark license authorization to "Xiaotusky (Shenzhen) Biological Technology Co., Ltd." on behalf of Playboy Enterprises International, Inc., signed by Defendant King Wong, and notarized by Olivia Liu ("Fake Authorization Letter to Xiaotusky"). The Fake Authorization Letter to Xiaotusky was used by Xiatousky on Tmall.com, a Chinese-language website for business to consumer online retailer, to sell counterfeit Playboy and Rabbit Head merchandise. |
| 2. Fake Authorization Letter to Flower Color Space | 42412 | Document purporting to give trademark license authorization to "Flower Color Space (Fujian) Brand Management Co., Ltd.." ("Flower Color Space") on behalf of Playboy Enterprises International, Inc., signed by Defendant King Wong, and notarized by Olivia Liu ("Fake Authorization Letter to Flower Color Space"). The Fake Authorization Letter to Flower Color Space was used to attempt to record licenses with the China National Intellectual Property Administration ("CNIPA") |
| 3. Fake Certificate of Incumbency | 87529 | Document entitled "Statement" purporting to give "King Wong" the "right to carry out the brand (trademark) licensing and industrial investment and financing business in the People's Republic of China, and to sign relevant cooperation agreements [on behalf of Playboy Enterprises International, Inc." ("Fake Certificate of Incumbency"). The Fake Certificate of Incumbency was used by Defendant King Wong to sign and execute the Fake Authorization Letters to Xiatousky and Flower Color Space. |

19.     The individual purporting to be King Wong within the video clips never personally appeared before Ms. Liu in connection with the notarization of the Invalid Notarizations she performed, which is required under California law. *See* Liu Affidavit, ¶¶ 7-9, Ex. 4; McCarthy Decl. ¶ 20.

20.     Ms. Liu failed to record Defendant King Wong's identifying information in connection with the Invalid Notarizations, such as his license number, passport number, or identification card number in her notary journal. *See* Liu Affidavit, ¶¶ 11-13; McCarthy Decl. ¶ 20.

21.     Ms. Liu did not record Defendant King Wong's signature or fingerprint in her notary journal. Liu Affidavit, ¶¶ 11-13.

22.     California notaries, like Ms. Liu, are required to maintain a notary journal recording details of all notarizations they perform, such as the date, signature, and a description of the document witnessed.[6] McCarthy Decl. ¶ 21.

23.     Ms. Liu provided additional supplemental materials to Playboy including (1) text messages with an individual residing in China known as "Lulu" who helped facilitate the notarization of the Invalid Notarizations for the Defendants; and (2) a bank statement screenshot indicating a wire transfer was made to Ms. Liu's company, MPUSA, Inc. in connection with the notarization. *See* Liu Affidavit, ¶ 15, Ex. 2; McCarthy Decl. ¶ 19.

---

[6] *See* California Secretary of State's Office, COVID-19 Frequently Asked Questions, https://www.sos.ca.gov/business-programs/bizfile/covid-19-frequently-asked-questions#:~:text=California%20Law%20does%20not%20provide,a%20mobile%20California%20notary%20public (last accessed Apr. 4, 2022) (stating "California Law does not provide the authority for California notaries public to perform a remote online notarization. The personal appearance of the document signer is required before the notary public.").

24.     The Defendants have continued to use the Invalid Notarizations in furtherance of their counterfeiting scheme to convince consumers and authorities that they are authorized to act on behalf of Playboy when they are not. McCarthy Decl. ¶ 22.

25.     Defendants have used the Invalid Notarizations to attempt to record a fraudulent license in the name of Defendant HuaSe Space with the CNIPA.  Defendants have used the Invalid Notarizations to record at least five fraudulent licenses with CNIPA in the name of Xiaotusky, a party unauthorized and not licensed to use Playboy's intellectual property. *Id.* ¶¶ 23-24.

26.     Defendants and Xiaotusky are working with the Xiaotusky Associates, multiple other individuals and entities in support of their counterfeiting scheme as detailed below (McCarthy Decl. ¶ 25):

|   | Individual/Entity Associated with Xiaotusky | Description of Relationship with Xiaotusky and Defendants' Counterfeiting Scheme |
|---|---|---|
| 1. | Shenzhen Zhuoran Intellectual Property Agency Co., Ltd. | Submitted Invalid Notarizations to the CNIPA on behalf of Xiaotusky to record fraudulent licenses |
| 2. | Lin Da Rong | legal representative and senior executive of Defendant Huase Space and entity Xiaotusky (Guangzhou) Enterprise Development Co., Ltd |
| 3. | Xiaotusky (Guangzhou) Enterprise Development Co., Ltd | Related entity to Defendant Huase Space that shares the same legal representative, Lin Da Rong |
| 4. | Fu Limei | Individual who invested in Defendant Huase Space, and served in the roles of executive director, general manager and legal representative of Rabbit Grandpa (Hainan ) Brand Management Co., Ltd |
| 5. | Rabbit Grandpa (Hainan ) Brand Management Co., Ltd | Entity that is a shareholder of Huahua Rabbit (Hangzhou) E-commerce Co., Ltd, whose executive director, general manager and legal representative is a natural person called Chen Jian |

|  | **Individual/Entity Associated with Xiaotusky** | **Description of Relationship with Xiaotusky and Defendants' Counterfeiting Scheme** |
|---|---|---|
| 6. | Chen Jian | An individual who is the executive director of Xiaotusky (Shenzhen) Biotechnology Co., Ltd. ("Xiaotusky Biotechnology"), a related entity to Xiaotusky, and the legal representative of Xiaotusky (Shenzhen) Trading Company Ltd. ("Xiaotusky Trading") and Xiaotusky (Shenzhen) Brand Management Co., Ltd. ("Xiaotusky Brand") |
| 7. | Xiaotusky (Shenzhen) Biotechnology Co., Ltd. ("Xiaotusky Biotechnology") | a related entity to Xiaotusky |
| 8. | Xiaotusky (Shenzhen) Trading Company Ltd. ("Xiaotusky Trading") | a related entity to Xiaotusky |
| 9. | Xiaotusky (Shenzhen) Brand Management Co., Ltd. ("Xiaotusky Brand") | a related entity to Xiaotusky |
| 10. | Huahua Rabbit (Hangzhou) E-commerce Co., Ltd, | a related entity to Xiaotusky |

27.     Defendants acting in concert with Xiaotusky and the Xiaotusky Associates have attempted to use the Invalid Notarizations to sell counterfeit Playboy merchandise on online retail stores like Tmall.com, which is operated by the Alibaba Group. *Id.* ¶ 27.

28.     Defendants have resisted the November P.I. Order by alleging that the Invalid Notarizations are legitimate documents authorized by Playboy when King Wong has no authority or affiliation with Playboy, and when the notarizations were performed remotely and do not comply with the requirements of California law.

<u>**Jurisdiction and Venue**</u>

29.     The Court adopts the entirety of its findings pertaining to "jurisdiction and venue" over the claims and the Defendants in this case as articulated in the November P.I. Order and full

incorporates them herein. *See* November P.I. Order, at 3-4. (citing Amended Complaint ¶¶ 15-22, 23; Brief Simultaneously Filed I.S.O. *Ex Parte* Application ("Brief"), pp 7-8.

30.　　The Court has subject matter jurisdiction over Playboy's claims under 28 U.S.C. §§ 1331 & 1338, and 15 U.S.C. § 1121.

31.　　The Court has personal jurisdiction over the Defendants in this action for the same reasons articulated in the November P.I. Order. *See id*.

32.　　Venue is also proper in this judicial district because a substantial part of the conduct and property is located in this jurisdiction, and Defendants' have registered Fraudulent Entities with addresses located in this judicial district in furtherance of their counterfeiting scheme. *See id.*, at 4 (also finding no other district appears more appropriately suited to resolve this dispute).

<u>**Preliminary Injunction Factors**</u>

33.　　The Court finds that the same findings of fact continue to exist warranting the preliminary injunction in this case as previously set forth in the November P.I. Order, and fully incorporates them herein. *See* November P.I. Order, pg. 4-8 (paragraphs ¶5-17). Namely, Playboy has established each of the factors required for a preliminary injunction:

(1) likelihood of success on the merits;

(2) irreparable harm;

(3) the balance of hardships tips in Playboy's favor; and

(4) a preliminary injunction serves the public interest.

*See Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008); *Seijas v. Republic of Argentina*, 352 Fed. App'x 519, 521 (2d Cir. 2009).

34.    Playboy is likely to succeed on the merits of its claims as it owns the registered

Playboy Marks[7] and associated common-law rights, and owns the registered PLAYBOY©

Copyrights[8], and the Defendants' fraudulent scheme involves counterfeiting the Playboy Marks

and directly copying Playboy's copyrighted content in the PLAYBOY© Copyrights. *See*

November P.I. Order, pg. 5 (paragraphs ¶ 5(a)-(d)) (citing declarations, exhibits and amended

complaint).

35.    Defendants have continued to infringe the Playboy Marks since the filing of

Playboy's Amended Complaint and the November P.I. Order by utilizing the Invalid

Notarizations to trick Chinese authorities and potential trademark licensees into believing they

are authorized to act on behalf of Playboy or are affiliated with Playboy when they are not. *See*

McCarthy Decl. ¶¶ 22-27.

36.    For the same reasons Playboy also has established a likelihood of success on the

merits of its New York common law trademark infringement and unfair competition claims. *See*

November P.I. Order, pg. 6 (citing *Avon Prods. V. S.C. Johnson & Son*, 984 F. Supp. 768, 800

(S.D.N.Y. 1997); *Twentieth Century Fox Film Corp. v. Marvel Enters.*, 220 F. Supp. 2d 289

(S.D.N.Y. 2002); *Franklin v. X Gear 101, LLC*, 17 Civ. 6452 (GBD) (GWG) 2018 U.S. Dist.

LEXIS 122658 (S.D.N.Y. July 23, 2018)).

37.    Playboy has also established that it will suffer irreparable harm absent preliminary

injunctive relief as the Defendants have filed the Fraudulent SOI with the California Secretary of

---

[7] Defined as the PLAYBOY® Trademarks, RABBIT HEAD DESIGN® Trademarks, BUNNY
STORE® Trademark, PLBY® Trademark, and PLEASURE FOR ALL® Trademarks
collectively, along with their common low rights, as defined in Playboy's Complaint.

[8] Defined as U.S. Copyright Registration Nos. VA 2-144-651, and VA 2-174-035.

State purporting to be on behalf of Playboy when it is not, the Defendants have used the Fraudulent SOI to further their scheme involving Counterfeit Websites[9] and Counterfeit Domains[10], and that the Defendants have created multiple fraudulent entities using the Playboy Marks without authorization. *See* November P.I. Order, pg. 6-7 (paragraphs ¶¶ 6-12).

38.     Given the facts articulated in the Liu Affidavit and McCarthy Declaration, and Playboy's Motion, absent modification of the November P.I. Order, Playboy will continue to suffer irreparable harm because Defendants will continue to utilize the Invalid Notarizations in furtherance of their scheme. *See* McCarthy Decl. ¶¶ 22-27.

39.     Playboy has shown that the balance of hardships tips in its favor given there is no evidence showing that the Defendants have any protectable interest in counterfeiting the Playboy Marks or PLAYBOY© Copyrights, or in using the Invalid Notarizations that were fraudulently created and do not comply with California law. *See* November P.I. Order, pg. 7-8 (paragraphs ¶¶ 13-15) (citing *AW Licensing, LLC v. Bao*, No. 15-cv-1373, 2015 U.S. Dist. LEXIS 177101 (S.D.N.Y. April 2, 2015)); *see* Liu Affidavit, ¶¶ 7-11, Ex. 3-4.

40.     Playboy has demonstrated it is likely to succeed on the merits of its claims, it will be irreparably harmed absent a preliminary injunction, and that the balance of hardships favors Playboy, Playboy has also shown that the public interest favors injunctive relief and modification of the preliminary injunction order. *See* November P.I. Order, pg. 8 (¶ 8).

**Good Cause for Alternative Service**

41.     For the reasons articulated previously in the November P.I. Order, the Court finds

---

[9] Defined as www.playboy.com.hk, www.playboyint.com, and www.playboylicense.com.

[10] Defined as http://www.papaintl.com/.

good cause continues to exist to grant alternative service of the filings in this matter on the Defendants via email and/or overnight courier because Playboy has established that traditional service methods would be futile. *See* November P.I. Order, pg. 8 (¶ 17) (citing declaration materials). Email service is most likely to give Defendants' notice of the filings in this action.

**Good Cause for Modification of November P.I. Order**

42.     The Court finds it has the power to clarify its injunction orders where warranted and to modify said orders under the Federal Rules of Civil Procedure. Good cause exists to modify and clarify its November P.I. Order as doing so would (1) clarify the scope of the injunction to prevent unwitting contempt, (2) the November P.I. Order explicitly contemplated modification to address the evolving nature of Defendants' unlawful conduct, and (3) new evidence presented by Playboy in the form of affidavits and exhibits warrants modification as Playboy could not have reasonably possessed said evidence at the time of the November P.I. Order.

43.     "It is 'undoubtedly' within the district court's power to 'issue an order clarifying the scope of an injunction in order to facilitate compliance with the order and to prevent unwitting contempt.'" *See Jones v. U.S. Postal Serv.*, No. 20-cv-6516, 2020 WL 6554904, at *5 (S.D.N.Y. Sept. 29, 2020) (quoting *IGT v. High 5 Games, LLC*, No. 17 Civ. 9792, 2018 WL 2939032, at *3 (S.D.N.Y. Apr. 17, 2018) (quoting *One11 Imports Inc. v. NuOp LLC*, No. 16 Civ. 7197, 2016 WL 7338422, at *1 (S.D.N.Y. Dec. 19, 2016)) (internal quotation marks omitted) (issuing clarification order to resolve "differing interpretations" of the court's preliminary injunction); *see also Regal Knitwear Co. v. NLRB*, 324 U.S. 9, 15 (1945) (explaining defendants "may petition the court granting [an injunction] for a modification or construction of the order" and "such relief would be in the sound discretion of the court")).

13

44.     "Clarifications of previously issued orders 'add certainty to an implicated party's efforts to comply with the order and provide fair warning as to what future conduct may be found contemptuous,' and 'may be obtained on motion or made *sua sponte* by the court.'" *Jones*, 2020 WL 6554904, at *5 (quoting *N.A. Sales Co. v. Chapman Indus. Corp.*, 736 F.2d 854, 858 (2d Cir. 1984)).

45.     Likewise, the Court can modify an order under Rule 60(b) when, among other reasons, newly discovered evidence is presented that could not have been discovered with reasonable diligence, or reasons are presented that justify said relief. *See* Fed. R. Civ. P. 60(b)(2), and (6).[11]

46.     The November P.I. Order explicitly contemplated that Playboy may seek an order from the Court modifying the injunction where new evidence was discovered. *See* November P.I. Order, at 13.

47.     Playboy has put forth additional evidence in the form of affidavits and exhibits that were not in its possession and could not have been discovered with reasonable diligence at the time it sought the relief that was granted in the November P.I. Order as Playboy had to:

    **a.**  seek said evidence regarding the Invalid Notarizations through a third-party subpoena;

    **b.**  follow-up with Ms. Liu concerning additional materials in response to the subpoena;

---

[11] "If a motion to modify or set aside the judgment ... is served more than 10 days after entry of the judgment, it is properly considered a motion under FED. R. CIV. P. 60(b), not one under Rule 59(e)." *Branum v. Clark*, 927 F.2d 698, 704 (2d Cir.1991).

    **c.**  engage a certified translator to translate evidence obtained from Ms. Liu involving the third-party subpoena once received;

    **d.**  engage with counsel for Ms. Liu concerning her affidavit herein; and

    **e.**  work with local counsel in China to investigate Defendants' efforts to use the Invalid Notarizations to further their counterfeiting scheme.

*See* McCarthy Decl. ¶¶ 22-25.

48.    The Liu Affidavit demonstrates that in contravention of California law, Ms. Liu remotely acknowledged and remotely notarized the following Invalid Notarizations for Defendant King Wong, who was not present before her:

    **f.**  Fake Authorization Letter to Xiaotusky: a purported license naming **Xiaotusky (Shenzhen) Biological Technology Co., Ltd.** to act as licensee of Playboy Enterprises International, Inc.;

    **g.**  Fake Authorization Letter to Flower Color Space: a purported license naming **Flower Color Space (Fujian) Brand Management Co., Ltd.** to act as licensee of Playboy Enterprises International, Inc.; and

    **h.**  Fake Certificate of Incumbency: a purported "Statement" that named Mr. King Wong to act on behalf of Playboy Enterprises International, Inc.

*See* Liu Affidavit ¶ 8, Ex. 2, McCarthy Decl. ¶ 18.

49.    The Liu Affidavit also demonstrates that instead of meeting Defendant King Wong in person, Ms. Liu received pre-recorded videos of an individual representing himself to be King Wong. *See* Liu Affidavit at ¶ 10-11, Ex. 4.

50.    Under California law, where Ms. Liu is a notary public, notaries public must perform notarization in person and the personal appearance of the document signer is required.

Liu Affidavit at ¶¶ 7-8; *See* California Secretary of State's Office, COVID-19 Frequently Asked Questions, https://www.sos.ca.gov/business-programs/bizfile/covid-19-frequently-asked-questions#:~:text=California%20Law%20does%20not%20provide,a%20mobile%20California%20notary%20public (last accessed Apr. 4, 2022) (stating "California Law does not provide the authority for California notaries public to perform a remote online notarization. The personal appearance of the document signer is required before the notary public.").

51.     In California, there was no exception to perform remote online notarization during the COVID-19 pandemic, and document signers still had to be physically present during the pandemic before a notary public for a notarization to be valid.[12] *See* Liu Affidavit ¶ 8.

52.     The Liu Affidavit also makes clear that Ms. Liu did not record Defendant King Wong's identifying information, such as his license number, passport number, or identification card number in her notary journal as required by California law, and that Defendant King Wong did not record his signature in her notary journal as required by California law in connection with powers of attorney. *See* Liu Affidavit at ¶¶ 10-14.

53.     Under California law, notaries must keep a notary journal, and record a signatory's identifying information, such as a license number, passport number, or identification card number, and signature in said journal, as well as the signature of each signatory. *See* Cal. Gov. Code § 8206.

---

[12] California Secretary of State's Office, COVID-19 Frequently Asked Questions, https://www.sos.ca.gov/business-programs/bizfile/covid-19-frequently-asked-questions#:~:text=California%20Law%20does%20not%20provide,a%20mobile%20California%20notary%20public (last accessed Apr. 4, 2022) (stating "California Law does not provide the authority for California notaries public to perform a remote online notarization. The personal appearance of the document signer is required before the notary public.").

54.     In cases of deeds, or powers of attorney, California notaries must also record the signatories thumb print in their notary journal in connection with the notarization of said documents. *See* Cal. Gov. Code § 8206(a)(2)(B).

55.     Under California law, the maximum fee for a notary public acknowledgement including the seal and the writing of the certificate is $15.00 per each signature. *See* Liu Affidavit at ¶ 14; *See* Cal. Gov. Code § 8211.

56.     The McCarthy Declaration provides evidence in the form of sworn testimony and demonstrating that the Defendants, Xiaotusky, and the Xiaotusky Associates, have used the Invalid Notarizations to continue to license Playboy's trademarks without authorization, purporting to be working on behalf of Plaintiff Playboy when they are not. *See* McCarthy Decl. ¶ 22-25 (detailing Defendants' efforts to register fraudulent Playboy trademark licenses with the China National Intellectual Property Administration).

57.     Accordingly, the Court finds good cause to clarify and/or modify the scope of the November P.I. Order to address the newly discovered evidence presented by Playboy and to (1) clarify that it applies to individuals and entities acting in concert with the Defendants, namely Xiaotusky and the Xiaotusky Associates, (2) declare that the Defendants, those acting in concert with them, and Xiaotusky and the Xiaotusky Associates are prohibited from using the Invalid Notarizations; and (3) declare that the Invalid Notarizations were notarized entirely remotely contrary to California law and are invalid.

58.     As the Court finds that Defendants have no right to use infringe upon Playboy's intellectual property, including its Playboy Marks, and its PLAYBOY© Copyrights, the Court finds that no undue hardship will be imposed on the Defendants in granting Playboy's motion to

clarify and/or modify the scope of the November P.I. Order to address the newly discovered evidence.

## I.     <u>MODIFICATION OF PRELIMINARY INJUNCTION</u>

**IT IS HEREBY ORDERED**, that Defendants, their officers, agents, servants, employees, and attorneys, and all others in active concert or participation with them, including Xiaotusky (Shenzhen) Biological Technology Co., Ltd., and the Xiaotusky Associates who receive actual notice of this Order by personal service or otherwise ("Restrained Parties"), are restrained and enjoined, pending final hearing and determination of this action, from anywhere in the world:

1. Using or counterfeiting the Playboy Marks, the PLAYBOY© Copyrights, and/or associated common law rights, or any confusingly similar marks, reproduction, counterfeit copies, or spurious imitations thereof, on or in connection with the offering of any goods and/or services, licensing services, websites, or social media, including but not limited to, owning or operating the Counterfeit Websites, Additional Domain and/or Counterfeit Domains;

2. Using or counterfeiting the Playboy Marks and/or PLAYBOY© Copyrights, or any confusingly similar marks, on or in connection with the Fraudulent Entities or the legal name or dba of any entity;

3. Operating any other website, licensing business or other business, entity, or store that purports to originate from Playboy, or to be sponsored or licensed by, or affiliated with Playboy or Playboy's authentic Website, or contains any portion of the Playboy Marks within its name or d.b.a., when it is not;

4. Forging, creating, circulating, or otherwise using any documents or materials purporting

to be executed by Playboy, or any of its affiliated entities, including but not limited to

forging signatures, seals, or other documents, including but not limited to the Invalid

Notarizations, and any other documents purporting to be notarized by Ms. Olivia Liu on

behalf of Defendant King Wong and/or Playboy Enterprises International, Inc.;

5.   Filing any document with any organization, including but not limited to U.S. domestic

government agencies, and/or foreign governments or governmental agencies, purporting

to be on behalf of Playboy, including but not limited to filing any documents with the

China National Intellectual Property Administration purporting to be on behalf of

Playboy Enterprises International, Inc. or any purported licensee;

6.   Forging, creating, circulating, or otherwise using any documents or materials purporting

to be issued by any U.S. domestic government agencies, and/or foreign governments or

governmental agencies in connection with Playboy and its business, including but not

limited to trademark registration certificates, or copyright registration certificates;

7.   Registering, owning, or using any domain name that consists of any of the Playboy

Marks, or includes "Playboy" in the domain portion of the domain name and is using in

connection with the Playboy Marks, PLAYBOY© Copyrights, and/or any other Playboy

source identifier, or that is confusingly similar thereto, or that is calculated to confuse

consumers into thinking that the website(s) accessible via the domain name(s) originate

with/from Playboy, or is sponsored or licensed by, or affiliated with, Playboy or

Playboy's authentic Website, when it is/they are not;

8.   Registering, owning, or using any entity whose name or dba consists of the Playboy

Marks, or includes "Playboy", or that is confusingly similar to any of the Playboy Marks,

or that is calculated to confuse consumers into believing that Defendants are Playboy,

19

affiliated with Playboy, or sponsored by Playboy, when they are not;

9.  Using in connection with Defendants' activities, goods, or services (or purported goods or services) any false or deceptive designations, representations, or descriptions of Defendants or their activities, goods, or services (or purported goods or services), whether by symbols, words, designs, statements, photographs, or other devices, which would damage or injure Playboy or its customers, or which would give Defendants an unfair competitive advantage or result in consumer deception;

10. Committing other acts calculated to cause consumers to believe that Defendants' domain names, websites, web content, goods/or services are offered under the authorization, sponsorship, supervision, or control of Playboy, or otherwise are connected with Playboy, or Playboy's authentic Website, when they are not;

11. Further infringing the Playboy Marks; PLAYBOY© Copyrights, and/or any other Playboy source identifier, or damaging any associated goodwill;

12. Stealing Playboy's customer's or potential customer's, licensees, or potential licensees;

13. Misappropriating that which rightfully belongs to Playboy, its customers or potential customers, or in which Playboy or its customers or potential customers have a proprietary interest;

14. Using, linking to, transferring, selling, exercising control over, or otherwise owning or accessing the Counterfeit Websites, Counterfeit Domains, and Additional Domain.

15. Using, linking to, transferring, selling, exercising control over, or otherwise owning or using the Fraudulent Entities;

16. Using, transferring, exercising control over, or otherwise accessing any accounts used in the transfer of money or electronic currency, or in the processing of card-based

transactions associated with the Counterfeit Websites, Counterfeit Domains, Additional Domain or Fraudulent Entities, as a means to further their fraudulent counterfeiting scheme.

Upon service as provided for in this Order, the Defendants, and other Restrained Parties, shall be deemed to have actual notice of the issuance and terms of the Modified Preliminary Injunction Order, and any act by any of the Restrained Parties in violation of any of the terms of the Modified Preliminary Injunction Order may be considered and prosecuted as contempt of Court.

In connection with this Order, the Court further finds and declares that:

1. the Defendants, including New Defendants HuaSe Space (Fujian) Brand Management Co., Ltd., King Wong, Kai Ming LAI, Flower Color Space (Fujian) Brand Management Company Ltd., and Fancy Space (Fujian) Brand Management Co. Ltd. have never acquired any authorization from Plaintiff Playboy Enterprises International, Inc. to act on its behalf;

2. The trademark authorization letters issued by the Defendants, including New Defendants HuaSe Space (Fujian) Brand Management Co., Ltd., King Wong, Kai Ming LAI, Flower Color Space (Fujian) Brand Management Company Ltd., and Fancy Space (Fujian) Brand Management Co. Ltd. were not issued by Plaintiff Playboy Enterprises International, Inc.;

3. Defendant King Wong has never been the Chief Financial Officer of Plaintiff Playboy Enterprises International, Inc.

4. Defendant King Wong has no right to sign any documents on behalf of Plaintiff Playboy Enterprises International, Inc.;

5.  Defendant Kai Ming LAI has never been the Chief Executive Officer of Plaintiff Playboy Enterprises International, Inc.

6.  Defendant Kai Ming LAI has no right to sign any documents on behalf of Plaintiff Playboy Enterprises International, Inc.;

7.  Xiaotusky (Shenzhen) Biological Technology Co., Ltd. is not authorized to act on behalf of Plaintiff Playboy Enterprises International, Inc.;

8.  Xiaotusky (Shenzhen) Biological Technology Co., Ltd. is not an authorized licensee of Plaintiff Playboy Enterprises International, Inc.;

9.  The Xiaotusky Associates are not authorized to act on behalf of Plaintiff Playboy Enterprises International, Inc.;

10. The Xiaotusky Associates and not authorized licensees of Plaintiff Playboy Enterprises International, Inc.;

11. Representatives for Defendants HuaSe Space (Fujian) Brand Management Co., Ltd., Flower Color Space (Fujian) Brand Management Company Ltd., and Fancy Space (Fujian) Brand Management Co. Ltd. have no right to sign any documents on behalf of Plaintiff Playboy Enterprises International, Inc.

12. The Defendants, including Defendants King Wong, Kai Ming LAI, HuaSe Space (Fujian) Brand Management Co., Ltd., Flower Color Space (Fujian) Brand Management Company Ltd., and Fancy Space (Fujian) Brand Management Co. Ltd. are prohibited from acting on behalf of Plaintiff Playboy Enterprises International, Inc.;

13. The Defendants, including Defendants King Wong, Kai Ming LAI, HuaSe Space (Fujian) Brand Management Co., Ltd., Flower Color Space (Fujian) Brand

Management Company Ltd., and Fancy Space (Fujian) Brand Management Co. Ltd. are not in possession of, or in control of, any authentic trademark registration certificates belonging to Plaintiff Playboy Enterprises International, Inc.;

14. The Defendants, including Defendants King Wong, Kai Ming LAI, HuaSe Space (Fujian) Brand Management Co., Ltd., Flower Color Space (Fujian) Brand Management Company Ltd., and Fancy Space (Fujian) Brand Management Co. Ltd. wrongfully procured the Invalid Notarizations containing trademark licensees and authorizations;

15. The Invalid Notarizations do not comply with the requirements of California law as Defendant King Wong did not personally appear in front of notary Olivia Liu as required under California Law;

16. The Invalid Notarizations do not comply with the requirements of California law as Ms. Liu failed to comply with her notary journal requirements in connection with the Invalid Notarizations as she did not record Defendant King Wong's identifying information, such as his license number, passport number, or identification card number in her notary journal; and

17. The Invalid Notarizations do not comply with the requirements of California law and are thus invalid.

In the event Playboy identifies additional counterfeit websites, domains, defendants or fraudulent entities in connection with Defendants' counterfeiting scheme, Playboy may move the Court for an order modifying this injunction as appropriate and may amend its complaint to include the additional parties.  To the extent the Defendants attempt to use confusingly similar variations of the Counterfeit Websites, Counterfeit Domains, or Additional Domain with URLs

that incorporate the Playboy Marks, Playboy may serve this Order on the website registrars and/or other third parties responsible for services involved with keeping the websites online, in order to freeze and/or make the websites and any confusingly similar variations of the Counterfeit Websites, Counterfeit Domains, and/or Additional Domain frozen and inaccessible to the Defendants.

<u>**Security for Preliminary Injunction**</u>

**IT IS FURTHER ORDERED** that, pursuant to Federal Rule of Civil Procedure 65, the bond posted on behalf of Playboy in connection with the November P.I. Order shall be converted to/used as security for this preliminary injunction order.

II.    <u>**ORDER CONTINUING TO PERMIT ALTERNATIVE SERVICE**</u>

**IT IS FURTHER ORDERED THAT, as** good cause for alternative service continues to exist in this case, Playboy may serve the filings in this case upon all Defendants by email and/or other electronic means, and/or by overnight courier, using the identifying information emails set forth in **Exhibit A,** and/or Defendants' purported physical addresses to the degree necessary to ensure and effectuate service.


**SO ORDERED**.

Date:  May 6, 2022
       New York, New York

_____
Victor Marrero
U.S.D.J.

# EXHIBIT A

1.  business@playboy.com.hk

2.  info@playboy.com.hk

3.  info@playboylicense.com

4.  licensing@playboyint.com

5.  china@playboylicense.com

6.  reena@playboylicense.com

7.  john@playboy.com.hk

8.  joanna@playboy.com.hk

9.  David.zhang@besto.vip

10. support@playboygo.com

11. info@papa-int.com

12. king.w198511@gmail.com

13. huodoo@gmail.com

14. akosikey247@gmail.com